SEPTEMBER, 23, 2019

**ORIGINAL**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 3 0 2019 ★

BROOKLYN OFFICE

James Cureton, 17401-052
FCI Hazelton
P.O.Box 5000
Bruceton Mills, WV 26525

Honorable CAROL B. AMON
United States District Judge
United States District Court
Eastern District of New York
225 Cadmen Plaza East
Brooklyn, N.Y. 11201

RE: U.S. v. James Cureton, 16-CR-23 (CBA)

Dear Judge AMON,

      Enclosed is a copy of my traverse in support
of my 28 U.S.C. § 2255 petition, also a copy of my motion asking to
be able to supplement my petition, or stay my petition. I fast and
pray that you grant my petition, to supplement. I believe my argument
regarding the jurisdictional element is unique, and I pray apon this
court to write a decision in favor or denial of my argument. I would
like to thank you in advance for carefully reading both motions.

      Also, I have yet to receive a copy of the Gov.
response . My appeal lawyer emailed me parts of it or all of it. This
facility is a lock down prone type of facility, which is hindering my
ability to effectively prepare my legal defense, therefore, I am
requesting to be ordered by this court to be placed in M.D.C BROOKLYN,
pending resolution of this outcome.



respectfully submitted,

James Cureton

ORIGINAL

ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

      -against-                       16 CR. 23 (CBA)

JAMES CURETON,

           DEFENDANT

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S TRAVERSE TO
HIS 28 U.S.C. 2255 MOTION TO VACATE, SET ASIDE, CORRECT SENTENCE
IN FEDERAL CUSTODY, FEDERAL CORRECTIONAL INSTITUTION HAZELTON**

JAMES CURETON a/k/a Jaquan a/k/a Q
#17401-052
FCI Hazelton
Federal Correctional Institution
P.O. Box 5000
Bruceton Mills, WV 26525
pro-se Litigant



## PRELIMINARY STATEMENT

Through numerous proffers and trial testimony Norbert Grigger, admitted that he murdered (Mecca), Raymond Brooks. He alleges that the motive was because of a kilogram of cocaine drug debt that Mecca, failed to pay, and also that he was paid $ 25,000 dollars two weeks in advance by a drug supplier known as (Ock) Keith Sawyer, to either collect the drug debt, or murder Mecca. Grigger alleges that the Defendant agreed to participate in the kilogram of cocaine drug conspiracy, and also in the murder of (Mecca) Raymond Brooks. The Defendant acknowledges that a drug conspiracy took place in Albany, N.Y.; However, the Defendant adamantly avers that no kilogram of cocaine drug conspiracy ever took place, nor did the Defendant have prior knowledge that Grigger had a firearm on him, and intended to murder Mecca on OCTOBER 31, 2009. The Defendants conviction was based primarily off of Grigger's testimony. Without Grigger's testimony no conviction would of been had against the Defendant.

### MATHEMATICAL EVIDENCE PROVES THAT GRIGGER"S TESTIMONY REGARDING THE TRIAD OF DRUG CONSPIRACIES IS FABRICATED AND UNWORTHY OF BELIEF.

The order of events of the Federal Prosecutors narrative and theory consist of a triad of drug conspiracies.

1. Mid-Sept. 2009, Mecca arrives in Albany, N.Y. and starts off with (only) heroin to sell.

2. A month later which would be Oct. 14th, 2009 Mecca begins to sell crack cocaine (for the first time), in which Grigger, allegedly supplies to the Defendant to give to Mecca, and Pringles to sell in a three to four week (several) time span.

3. After, the alleged (initial) crack cocaine conspiracy, Mecca, allegedly ask (Ock) Keith Sawyer, for a bird of coke ( kilogram of cocaine), The alleged transaction is also said to have happened also in Mid-Sept. of 2009.

## TIME LINE CHARTS

### SEPTEMBER OF 2009

```
11- - - -15-16-17-18-19-20-21-22-23-24-25-26-27-28-29-30
A        B-D
```

### OCTOBER OF 2009

```
1-2-3-4-5-6-7-8-9-10-11-12-13-14-15-16-17-18-19-20-21-22-23-24-25-26-
                              C                    E
27-28-29-30-31
          F
```

A. The Islip, N.Y. (attempted) burglary-------------------9/11/2009

B. Raymond Brooks started off
   with only heroin in Albany, N.Y.-----------------------Mid-Sept. 2009

C. Raymond Brooks, began selling
   crack cocaine a month after selling
   heroin in Albany, N.Y. -------------------------------10/14/2009

D. Mid-Sept. 2009 Grigger
   allegedly received a call from Ock
   concerning Mecca, asking for a bird
   of coke ( kilogram of cocaine)------------------------Mid-Sept. 2009

E. Grigger, was allegedly paid
   $25,000, by Ock, two weeks in
   advance to murder Mecca ------------------------------10/18/2009

F. (Mecca) Raymond Brooks was murdered--------------------10/31/2009

3

```
          AUGUST OF 2009                        SEPTEMBER OF 2009
  Sun-Mon-Tue-Wed-Thu-Fri-Sat              Sun-Mon-Tue-Wed-Thu-Fri-Sat
                            1                       1    2    3    4    5
   2    3    4    5    6    7    8           6    7    8    9   10   11   12
   9   10   11   12   13   14   15          13   14   15   16   17   18   19
  16   17   18   19   20   21   22          20   21   22   23   24   25   26
  23   24   25   26   27   28   29          27   28   29   30
  30   31
```

## THE TRIAD

**1.**

The heroin conspiracy

**2.**

The crack cocaine conspiracy supplied by Grigger, to the Defendant who then gave to Mecca, and Pringles to sell for (3) to (4) weeks.

**3.**

The kilogram of cocaine drug transaction and conspiracy.

The record reveals that the Albany, N.Y. drug conspiracy between the Defendant, Grigger, and Mecca, initially began after the September 11th, 2009, failed attempt burglary in Islip, N.Y.. The Federal prosecutor led their cooperating witness Grigger, to testify that the alleged kilogram of cocaine drug transaction and conspiracy took place "approximately Mid-Sept. 2009." (See: Tr. Pg. 247 L. 18-22). The 15th is Mid-Sept. exactly, therefore, if you place the alleged kilogram of cocaine drug transaction and conspiracy approximately anywhere near Mid-Sept., that would then push back and place the alleged (initial) crack cocaine conspiracy that was allegedly supplied by Grigger, to the Defendant to give to Mecca, and Pringles to sell in the (3) to (4) week span that Grigger, testified to, plus the heroin conspiracy way past Sept. 11th, of 2009, and into the month of August, making Grigger's testimony patently incredible.

4

| SEPTEMBER OF 2009 | | | | | | |
|---|---|---|---|---|---|---|
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |  |  |  |

| OCTOBER OF 2009 | | | | | | |
|---|---|---|---|---|---|---|
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

It's from Grigger's, testimony (alone) that we learn that Mecca, first began selling crack cocaine in Albany N.Y., a month after the first conversation about Albany, ( See: Tr. Pg. 233 L. 20-25). The very first conversation about Albany took place after the Sept.11th, 2009, failed attempt burglary in Islip, N.Y.; Therefore, when you calculate a month from the 15th of Mid-Sept., it will take you to Oct. 14th, 2009. When you place the initial crack cocaine drug conspiracy at 10/14/09, as the starting date, it would actually take up the remaining weeks that is left in the month of October. Three weeks from 10/14/09, will take you into the month of November. Four weeks from 10/14/09, will also take you into the month of November. Several(two weeks?), will take you to 10/27/09, leaving no room for the alleged kilogram of cocaine drug transaction and conspiracy to take place, nor the alleged payment in advance of $25,000 dollars, nor the murder of Mecca, depending on which of the alleged weeks this court chooses to adhere to, or go by. In any event mathematically, the kilogram of cocaine drug conspiracy does not fit, and throws the alleged drug conspiracy all the way out of sync.

5

From the time line charts we can easily see that the triad of drug conspiracies does not fit anywhere within the (47) days that Mecca, was in Albany, N.Y.; It's imperative to note at this time that from 9/15/09, to 10/31/09, is a total of (47) days. There is absolutely no algorithm of sequence where you could possibly place the triad of drug conspiracies within the (47) days. This mathematical fact proves that Grigger's testimony regarding the alleged triad of drug conspiracies defies physical realities, and should be rejected by this court. The jury never had an opportunity to review these facts in this light because it was never presented to them in this fashion and form. The facts that were presented to the jury by the Federal Prosecution team, were from an overly broad stand point. The federal Prosecutor's narrative and theory when looked at from an overly broad perspective appears worthy of belief. They (Federal Prosecutor's), presented their narrative and theory to the jury without detailing the actual time line of sequence of the Albany, N.Y. drug conspiracy. However, when you place the sequence of events in their actual order, the facts reveal that Grigger's proffers and testimony are more than merely inaccuracies, or inconsistencies, they are clearly misleading, which constitutes as perjury. While it was the Federal prosecution team that obscured and clustered the facts of this case making it impossible for the jury to unravel in order to make a rational decision; At the same time the Defendant's trial counsel never honed in on the significance of putting together the actual time line of the Albany, N.Y. drug conspiracy in chronological order to show that Grigger, was being untruthful about what really happened.

6

## THE SIGNIFICANCE OF KEITH SAWYER'S STATEMENTS

A status conference was had before the Honorable Judge Margo K. Brodie, United States District Judge, on March 19, 2019, in which Keith Sawyer, made the following statements. ( 18-CR-00655 (MKB) ). :

pg. 8. l. 25. " so I'm saying that Mr. Brooks, the person, the

pg. 9. l. 1-11; 14-25

1. deceased and stuff whatever, I didn't even know this guy. I
2. didn't even know him. I met him twice. Twice in my entire
3. life. Once in Houston, I spent the night at the witness's,
4. the cooperating witnesses house for two or three days. He had
5. a nice house, no furniture. we slept on the floors. And
6. after two or three days I said, you know the next time I come
7. down here, I'll stay at a hotel. That was the first time that
8. I met him in my entire life.
9. The second time I met him was coming back from down
10. south, the witness, he asked me to stop on my way up at--he
11. was at a barber shop in like, a -- because--

14. so I stopped. I stopped at a barber shop in his
15. neighbohood in Staten Island projects, city housing projects,
16. and I saw the guy there and, you know, I remembered him
17. from Houston. We spoke about the Knicks and that was it.
18. That was it. We never had another conversation. I've never
19. spoken to this guy on the phone. I've never text him. He's
20. never text me. He's never been to my house . I've never been
21. to his house. I don't know him.
22. And although it's a tragedy that he lost his life, I
23. had zero to do with it; nothing at all to do with it. I'm no
24. more responsible for his murder than anyone else inside this
25. room.

pg. 10. l. 1-10

1. So I'm saying that, you know, I'm not trying
2. to pull the wool over anyone's eyes. you guys have the best
3. investigators in the world. Check my story out. You won't
4. find me having a conversation, and text message, anything from
5. this man. Never. I've had zero conversations outside
6. the talk we had in Houston and in Staten Island.
7. So for the witness to say that this was a murder
8. because of a kilogram of cocaine, and then I turned around and
9. paid him 25 thousand dollars, it's ridiculous. I give you a
10. few different reasons why it's ridiculous.

7

pg. 12. ·l. 9~15

```
 9. DEFENDANT SAWYER: But I will-- I just want to say
10. one last thing; right?
11. I'm willing to take a lie detector test. I mean, I
12. know lie detector tests aren't the most reliable, but there's
13. other things. There are other tests that you can rely on that
14. are more reliable than just a polygraph tests. There's--I
15. mean...
```

According to Grigger, he was paid $ 25,000 dollars by Ock, two weeks in advance to murder Mecca, or collect the alleged drug debt. It is Grigger's uncorroborated allegation that Mecca, somehow, contacted Ock, while he (Mecca), was in Albany, N.Y., and asked Ock, for a bird of coke, (kilogram of cocaine). Ock, then allegedly called Grigger, to verify the transaction. Grigger, allegedly goes to Ock's, house the next day to discuss how much to sell the Kilogram of cocaine to Mecca. Mecca, comes down to Brooklyn, N.Y., from Albany, to Ock's, house where Ock, places a black taped up object somewhere in the car that Mecca, was driving. During the Defendant's trial, the Defendant, did not have any kind of evidence to refute such allegations by the cooperating witness. Nearly three years later after the Defendant's trial Ock, Keith Sawyer, is arrested on a Federal drug charge unrelated to this incident, and calls Grigger's, entire allegations regarding the allege kilogram of cocaine drug transaction and conspiracy, and murder for hire as ridiculous. Mr. Sawyer, avers that he had zero to do with the murder of Mecca, and that he doesn't really know Mecca. He states that he met Mecca, twice in his life. Mecca, doesn't even have Mr. Sawyer's, phone to call or text Mr. Sawyer. Mecca, has never been to Mr. Sawyer's house, making the allege kilogram of cocaine drug transaction clearly impossible to have taken place. Mr. Sawyer's statements are paramount and would have been crucial for the Defendant's defense at trial.

Count two of the Defendant's indictment, 21 U.S.C. § 848(E)(1)(A), the 280 grams or more of cocaine base, was based off of the alleged kilogram of cocaine in question. Mr. Sawyer's statements would have created reasonable doubt in the juror's minds. In fact count one of the indictment, the predicate offense, drug trafficking crime, could have only been in relation to the alleged kilogram of cocaine in question.

### THE SIGNIFICANCE OF CHARMAINE RICHARDSON*S STATEMENT

Ms. Richardson, was interviewed by the Albany, N.Y., homicide Detectives, where she stated that Mecca, had only been in Albany, N.Y. for about a month.  Also, that the Defendant had called her to wish her a happy birthday, and that the Defendant was suppose to take her out to a haunted house in Albany, N.Y. for her birthday, (paraphrasing). Two critical points that is worth noting is that, 1. Mecca, was actually in Albany, N.Y., less than (47), which puts a tighter strain on the alleged triad of drug conspircies that Grigger, alleges. 2. Ms. Richardson's, statement also show that the Defendant didn't merely call her to set up a murder plot. What it shows is that the Defendant had plans to take Ms. Richardson, out for her birthday after the alleged drug meeting. Ms. Richardson's statement would have shown reasonable doubt that the Defendant had any prior knowldge that Grigger, intended to murder Mecca.

9

## ARGUMENT

### FAILURE TO INVESTIGATE AND CALL DEFENSE WITNESSES CONSTITUTES INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Absent the incompetence of counsel or some other exceptional circumstance, a defendant will be bound by the decisions of his counsel. Mistakes of judgment on the part of counsel, or mistakes of tactics, strategy or policy in the course of a criminal trial do not constitute grounds for a later collateral attack pursuant to 28 U.S.C.S. § 2255. Estelle v. Williams, 425 U.S. 501. 48 L. Ed. 2d 126, " under our adversary system once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney." Ineffectiveness claims in all American courts are judged by the standards set forth in Strickland v. Washington, which requires reversal where a defendant can show that (1) trial counsel's "performance fell below an objective standard of reasonableness" and (2) " a reasonable probability that, but for counsel's unprofessional error's, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984).

In the matter at hand the Defendant asserts that trial counsels strategy and trial tactics were underdeveloped. 1. Trial counsel had no sense of awareness of the mathematical evidence in regards to the time charts which essentially proves that Grigger's testimony was misleading regarding the allege triad of drug conspiracies. 2. failure to investigate and subpoena Keith Sawyer, is not only unjustifiable, but unexplainable. 3. Failure to investigate and subpoena Charmaine Richardson, is also unjustifiable, and unexplainable. Grigger talked about a person named Ock all through out his proffers. Trial counsel had ample opportunity to investigate Ock, prior to trial and never did. Had trial counsel

10

investigated Mr. sawyer, and Ms. Richardson, trial counsel's trial strategy and tactics would had been different. Strategic choices are made after a potential witness has been interviewed , not call that witness or calling that witness to testify. An evidentiary hearing may be required to examine what thought process was taken to decide not to even examine these witnesses in question. The Defendant asserts that by not making any attempt to interview these potential witnesses, made trial counsel's performance fall below, "an objective standard of reasonableness". The record thus far is void of any justifiable reasonableness as to why trial counsel chose not to even interview these witnesses, or even attempt to locate them, before making a strategic choice not to call these potential defense -- witnesses to testify at Defendant's trial. Failure to investigate and interview these witnesses, and lacking total knowledge of the time frame of the Albany, New York drug conspiracy, made trial counsels trial decisions, strategic and tactical ineffective and underdeveloped. For the above reasons the Defendant believes that the first prong of Strickland v. Washington, has clearly been met. As for prong # two, the Defendant only has to show that a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The Defendant declares that had trial counsel made the jury aware of the impossibility of the triad of drug conspiracies that Grigger testified to, along with Mr. Sawyer's, testimony, alone the result would have been different, resulting in an acquittal on all counts. There is a strong probability that the jury would of found Grigger's entire testimony unworthy of belief.

11

Trial counsel had no defense for Grigger's trial testimony in regards the alleged kilogram of cocaine drug transaction, or conspiracy. Trial counsel had no defense for Grigger's trial testimony regarding the alleged murder for hire allegations. Trial counsel was unable to object on any grounds or refute any of it. The defendant asserts that had trial counsel investigated and interviewed and subpoenaed Mr. Sawyer, to testify at Defendant's trial , Mr. Sawyer's, testimony would have been damaging to Grigger's testimony, coupled with the fact that had trial counsel shown the jury how impossible the triad of drug conspircies could not have taken place, along with Ms. Richardson's statements , the probability is almost certain that the result would have been different and favorable to the Defendant.

The Defendant is by no means calling trial counsel incompetent. The Defendant is simply stating that it was a clear error on the part of trial counsel not to interview these witnesses in question before making a strategic decision not to call these potential defense witnesses to testify at Defendant's trial. Giving the particular facts of this case makes these errors <u>Exceptional Circumstances,</u> in which renders trial counsels errors ineffective assistance of counsel.

### EMPHASIZING THE FACTS, AND THE ARGUMENT

When you place the alleged kilogram of cocaine drug transaction and conspiracy anywhere near Mid-Sept. of 2009, it literally pushes the alleged crack cocaine conspiracy, "listed as number two of the <u>triad of drug conspiricies</u>," plus the alleged herion conspiracy, "past", Sept. 11. 2009. This fact removes any possibility of the

12

alleged kilogram of cocaine drug transaction and conspiracy taking place anywhere , near Mid-Sept. 2009. When you place the alleged crack drug conspiracy, at Oct. 14th, 2009, that was allegedly supplied by Grigger to the Defendant to give to Mecca and Pringles to sell, that would then wipe out any possibility of Grigger receiving $25,000 dollars two weeks in advance from the death of Mecca, and push the allege kilogram of cocaine drug transaction and conspiracy at the very end of October, 2009; Into November of 2009. These pertinent facts were never brought to light by trial counsel making the adversary process next to nil.

Had the jury been apprised of these facts, along with the statements of Keith Sawyer, and Charmaine Richardson, there is a strong reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different.

The Defendant has yet  receive the Gov.'s response,  the Defendant's appeal lawyer emailed a copy of the response. In reply, The Gov. misses the entire mark of the Defendant's arugment. First the Defendant agree's with the Gov. that trial counsel did a thorough and effective cross examination of Grigger, with the information that they had. It was the failure to investigate these witnesses that rendered their performance deficient, along with not being prepared and well informed prior to trial of the facts of the alleged triad of drug conspiracies. Stating that Sawyer would have or may have elected not to testify, invoking his Fifth Amendment, is speculation. Statung that Mr. Sawyer, would have committed perjury, and that counsel for ethical reasons wouldn't risk suborn perjury, again is mere speculation that Mr. Sawyer, would even commit such an act. The Defendant is not focused on attempting to add further impeachment ammunition. The Defendant asserts that Grigger,

13

blatantly committed perjury. This case is not a simple drug case,
it's a first degree murder charge where a conviction was had based
on false testimony by the cooperating witness. The defendant is not
in denial of being a drug dealer, nor of being present when a murder
took place. Mr. Sawyer, is not in denial of being a drug dealer, his
statements on March 19,2019 make that very clear. Selling drugs and
being involved in a first degree murder charge is extremely different,
like night and day. Trial counsel never investigated this witness
Mr. Sawyer, and never gave Sawyer a chance to test whether his testimony
would have been believable or not. He could have submitted sawyer, to a
polygraph test for trial counsel's own purposes as to whether he should
Sawyer, on the stand or not. Without, even investigating this witness
trial counsel's trial strategy, or strategic choice not to investigate
this witness is unjustifiable, and render's his assistance of counsel
ineffective. See Greiner v. Wells, 417 F.3d 305(2d cir. 2005)" the
Defendant is not arguing failure to subpoena, The Defendant is arguing
failure to investigate." Trial counsel had every opportunity to locate
Mr. Sawyer, and Ms. Richardson, but failed to do so. Trial counsel had
ample time to familiarize themselves with the facts of this case and
they didn't which render's their assistance of counsel ineffective.  No
matter how thorough their cross-examination was towards Grigger, is of
no significance, sense they were unaware of the particular facts of the
triad of drug conspiracies that Grigger, was allowed to testify to
without objection. It made the adversary process unfair and ineffective.
It was Grigger's, testimony alone that alleges that the Defendant knew
in advance that Grigger, had a firearm on him (Grigger). Had the jury

14

been made aware of the fact that Grigger, lied under oath regarding the triad of drug conspiracies, there is a reasonable probability that they would have chose to not believe Grigger, at all. The Defendant is entitled to the effective assistance of counsel, by the United States Constitution, under the Sixth Amendment, This a guarantee for all U.S. citizens.  The Fourteenth Amendment, guarantess DUE PROCESS, also for every U.S. citizen. See Napue v. illinois, 360 U.S. 264, " A lie is A lie," ; Mooney V. Holohan, 294 U.S. 103; Giglio v. United States, 405 U.S. 150; Taylor v. Lombard, 606 F. 3d 371 ; Dubose v. Lefevre, 619 F. 2d 973. See also Berryman v. Morton,  100 F.3d 1089 (3rd cir. 1996) " Failure to investigate and call defendse witnesses constituted ineffective assistance of counsel. Mr. Sawyer's testimony would have supported the fact that Grigger, committed perjury. Perjury is stronger than just merely impeachment purposes. The facts are clear in this case and can not be disputed, Grigger, apparently lied to a material fact. The mathematical evidence shows this fact. Trial counsel never pointed this fact out to the jury because trial counsel was unaware of this fact. Failure to familiarize themselves with the facts of the case rendered their assistance ineffective. It is unsound strategy not to inform the jury that the triad of drug conspiracies that Grigger, testified to were mathematically impossible. There is no explanation for such neglect. The above facts rendered the Defendant's trial unfair. A conviction had on perjured testimony to material facts is unconstitutional. It is in the Great interest of justice that the Defendant be awarded an evidentiary hearing regarding the pertinent issues, and that the Defendant be given an opportunity to prove in front of this court 1. The perjured testimony of Griger, 2. trial counsel's neglect of being properly prepared , which

15

rendered their trial strategies ineffective. 3. failure to investigate Mr. sawyer, and Ms. Richardson, without reason is unexplainable, especially when a private investigator was at their disposal. The Defendant would also like to question the private investigator at the evidentiary hearing to find out what if anything did the private investigator investigate.

## CONCLUSION

Because trial counsel was ineffective by failing to investigate key defense witnesses, and by failing to apprise themselves of the pertinent facts of Defendants case, and by failing to show the jury that the cooperating witness Grigger, committed perjury, denied the Defendant the effective assistance of trial counsel. The Defendant respectfully request that His conviction be set aside, and granted a new trial under 28 U.S.C. § 2255.

Dated: Hazelton, WV
        September 23,2019

        Respectfully submitted,

James Cureton, a/k/a Jaquan a/k/a Q

by: *James Cureton*

James Cureton, 17401-052
FCI Hazelton
Federal Correctional Institution
P.O. Box 5000
Bruceton Mills, WV 26525
pro-se litigant

16.

James CuReToN, # 17401-052

FCI Hazelton

Federal Correctional Institution

P.O. Box 5000

Bruceton Mills, WV 26525

Pro-se litigant

To: CLERK OF U.S. DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

225 CADMAN PLAZA EAST

Brooklyn, NY 11201



PRO SE OFFICE

RECEIVED

SEP 3 0 2019